JOHN MURPHY AND JOHN DARRINGTON, ADMINISTRATORS OF WILLIAM MATHESON, DECEASED, PLAINTIFFS IN ERROR, v. ANGUS STEWART, ADMINISTRATOR OF ALEXANDER GRANT.

The court below, on motion, arrested a judgment for the plaintiff, after verdict, but without entering also that he took nothing by his writ.

The declaration contained two counts; in the first, the plaintiff sued as administrator; and in the second, in his own personal right. A general verdict was given, and the judgment arrested on account of the misjoinder of counts.

Afterwards, and before a writ of error was brought, a motion was made by the plaintiff to set aside the order arresting the judgment, and for leave to enter a *nolle prosequi* upon the second count.

An affidavit was filed by the plaintiff's counsel, stating that the only evidence offered on the trial was given on the part of the plaintiff, and that the defend-

ant offered no evidence whatever. The nature of the evidence was also stated, and the facts stated in the affidavit were not controverted.

The court below set aside the order arresting the judgment, a year after it was made, and allowed the verdict to be amended by entering the same *nunc pro tunc,* on the first count only.

In this there was no error.

All that is required is that the court should amend the verdict within a reasonable time; and this may be done upon the judge's notes of the evidence given at the trial or upon any other clear and satisfactory evidence. The practice is a salutary one and in furtherance of justice.

The necessity of a profert of letters of administration depends upon the local laws of a state.

Where the declaration alleges a partnership, and the jury find a general verdict, they must be presumed to have found that fact; and proof that the chose in action was endorsed in blank was sufficient to sustain the first count. The plaintiff has a right to elect in what right he sues.

After all, the question of amendment was a question of discretion in the court below, upon its own review of the facts. This court has no right or authority, upon a writ of error, to examine the question; it belonged appropriately and exclusively to the court below.

THIS cause was brought up by writ of error from the Circuit Court of the United States for the southern district of Alabama.

In 1818 and 1820, the following promissory note and due-bill were given:—

$3,428 18.                                    *30th September,* 1818.

Four months after date I promise to pay Grant and McGuffie, or order, three thousand four hundred and twenty-eight dollars eighteen cents, value received.                         WM. MATHESON.

  Endorsed,
    GRANT and McGUFFIE.

       *Charleston, 25th February,* 1820.

Due Grant and McGuffie, or bearer, on demand, three hundred and forty-four dollars sixty-six cents, with interest from date.

  $344 66.                              WILLIAM MATHESON.

In 1838, Angus Stewart as the administrator of Grant, who was alleged to be the surviving partner of Grant and McGuffie, brought a suit in the Circuit Court of the United States for the southern district of Alabama against Murphy and Darrington, administrators of Matheson.

The record (as brought up by a *certiorari*) showed that the declaration contained the two following counts, first:—

" Angus Stewart, who is a citizen of the state of South Carolina, and administrator of all and singular the goods and chattels, rights and credits, of Alexander Grant, deceased, who was survivor of McGuffie, late merchants and partners, trading under the name and firm of Grant and McGuffie, who at the time of their death, and at the time of the execution of the contract herein set forth, were also citizens of the state of South Carolina, complains of John Murphy and John Darrington, administrators, with the will annexed, of William Matheson, deceased, citizens of the state of Alabama, in custody, and so forth, in a plea of trespass on the case, and so forth; for that, whereas the said William Matheson, in his lifetime, on the 30th day of September, 1818, at Charleston, to, wit, in the district aforesaid, made his promissory note in writing, by which he promised to pay said Grant and McGuffie, or order, four months after the date thereof, $3428 18, value received, and then and there delivered said note to said Grant and McGuffie; and also, on 25th February, 1820, said Matheson executed his due-bill, or promissory note, at Charleston, to wit, in district aforesaid, by which he promised to pay said Grant and McGuffie, or bearer, on demand, $344 66, with interest from the date of said note; which periods have long since elapsed; and being so liable, he, the said Matheson, in his lifetime, and his said administrators since his death, promised and assumed to pay to said plaintiff the said sums of money, to wit, the sums of $3428 18 and $344 56, according to the tenor and effect of said notes; yet neither the said Matheson, in his lifetime, nor his said administrators since his death, have paid the said several sums of money, according to their several promises and assumptions, and the tenor and effect of the said notes, either to said Grant and McGuffie, in their lifetime, or to said administrator since their death, to the damage of said administrator $16,000.

The second count was as follows :—

And whereas, also, the said Angus Stewart complains of said defendants, administrators as aforesaid, in custody, &c.; for that whereas, the said William Matheson, on the 30th September, 1818, at Charleston, &c., made his certain promissory note, in writing, whereby he promised to pay, four months after date thereof, to one Grant and McGuffie, or order, $3428 18, and then and there delivered the said note to Grant and McGuffie; and the said Grant and McGuffie, to whose order the said note was payable, then and there endorsed and delivered the same to the said plaintiffs, of all which

the said Matheson had full notice; which period has now elapsed. And the said Matheson also, on the 25th February, 1820, at Charleston, aforesaid, &c., made his note, in writing, whereby he promised to pay to Grant and McGuffie, or bearer, on demand, $344 66, with interest from the date of the said note; and then and there delivered the same to said Grant and McGuffie, who then and there delivered the same to the said Angus Stewart. And the said note being due and demanded in the lifetime of the said Matheson, he was liable to pay the same; and being so liable, the said Matheson, in his lifetime, undertook and promised to pay the same, and his administrators since his death; but neither did the said Matheson, in his lifetime, nor have his administrators since his death, paid the said sums of money, according to their several promises, and the tenor and effect of the said notes, although said Matheson in his lifetime was, and his administrators have been, since his death, frequently requested to do so, to the damage of the said plaintiff $16,000; and thereof he brings suit, &c.

To this declaration the plaintiffs in error, Murphy and Darrington, put in two pleas, viz.: the general issue and the statute of limitations.

The case was tried at November term, 1840, when the jury found for the plaintiff, and assessed his damages at $8250.

At the same term, a motion for arrest of the judgment was made and granted, on the ground of a misjoinder of counts and causes of action in the declaration.

At March term, 1841, nothing was done in the case; but in the November term, 1841, on motion of the counsel for the plaintiff, the order of the November term, 1840, arresting the judgment, was vacated, the verdict was ordered to be amended so as to apply to the first count in the declaration, the plaintiff was permitted to enter a *nolle prosequi* on the second count in the declaration, and judgment was directed *nunc pro tunc* upon the verdict, applying it to the first count in the declaration; and judgment was entered accordingly.

The ground upon which the court set aside the order arresting the judgment, &c., was the following affidavit, which was filed, accompanied by the deposition of Chapman Levy, which was the same that was read upon the trial. The deposition is too long to be inserted, but stated in substance that the notes and due-bill were handed to Levy for collection in 1821 or 1822, and that long afterwards he, Levy, had a conversation with Matheson, which was supposed to take the case out of the statute of limitations.

*Affidavit.*

Personally appeared before me, P. Phillips, an attorney of this court, who, being duly sworn, says: that on the trial of the cause of Angus Stewart *v.* John Murphy and John Darrington, in which a verdict was rendered for the plaintiff at the November term, 1840, of this honourable court, the plaintiff offered the depositions of Chapman Levy, Jacob Axon, and —— McKenzie, and the notes, all of which are now on file; that this was the only evidence offered by plaintiff, and that no evidence was offered by the defendants, and that the cause went to the jury upon the above depositions of the plaintiff alone.                                    P. PHILLIPS.

Sworn to and subscribed in open court, 3d December, 1841.

DAVID FILES, *C. C. C. S. D. Ala.*

To review the decision of the court in setting aside the order for arresting the judgment, &c., the writ of error was brought.

*Ogden,* for the plaintiffs in error.

*Nelson,* (attorney-general,) for the defendants in error.

*Ogden,* for the plaintiffs in error, contended that the motion to amend the verdict, by making it apply to the first count in the declaration, should have been made during the same term in which the verdict was rendered, or at any rate at the next term: and that the court below should not have ordered the amendment at the second term after the verdict was rendered. He stated that he had been able to find no case where such a motion has been granted or made after the term in which the postea was returned to the court in bench. See 12 Peters, 492; 1 Siderfin, 162.

But, secondly, if it was competent for the court at so late a day to order the verdict to be amended, by making it applicable to the first count in the declaration, then we contend that there was not sufficient in that count to justify a judgment in favour of the plaintiff upon it; because,

1. This count of the declaration does not sufficiently allege a partnership between Grant and McGuffie, nor that Grant was the survivor of them, which allegation is necessary to entitle the plaintiff to recover.

2. It alleges a promise by Matheson in his lifetime, and by his administrators since his death, to pay the plaintiffs the money according to the promises made to Grant and McGuffie in their lifetime; and that yet neither the said Matheson in his lifetime, nor his said

administrators since his death, have paid the said sums of money, either to Grant and McGuffie in their lifetime, nor to the said administrator since their death, to the damage of the said administrator $16,000.

The allegation is, that Matheson in his lifetime, and his administrators since his death, promised to pay the plaintiffs the sums of money mentioned in the declaration. Now, who is meant by the plaintiffs? Not Grant and McGuffie, for they are both dead. The only plaintiff is Angus Stewart, the administrator. There is, then, no allegation of a promise to pay Grant and McGuffie, nor the survivor of them; without such a promise no action can be brought by the administrator.

3. There is no profert of the letters of administration. This defe.. is, however, probably cured by the verdict.

But independent of the defects in the declaration, there was no evidence in the case justifying a verdict for the plaintiff upon this count in the declaration.

1. There is no sufficient proof of the partnership between Grant and McGuffie.

The only evidence upon this subject is found in the deposition of Chapman Levy.

He says, I was acquainted with McGuffie, of the firm of Grant and McGuffie, "who were said to have a mercantile house in Charleston, South Carolina."

And "Matheson told him, the witness, that he would not forget the kindness of Mr. McGuffie, and the assistance he had received from the firm through him."

The plea of the general issue puts all the material allegations in the declaration in issue.

If, therefore, there be not sufficient proof of a partnership between Grant and McGuffie, the plaintiff is not entitled to recover under this count.

Again, there is no proof of the death of Grant and McGuffie, or of either of them.

The only evidence upon this point is contained in the deposition of Levy; he says, "I believe I was then informed of the death of one or both Grant and McGuffie."

It is confidently believed that this is no evidence of the death of Grant and McGuffie, or of either of them, and certainly it is no proof of the fact which was the survivor of them.

I submit, then, that there was no evidence to support the verdict upon the first count of this declaration.

But, secondly, if any count was supported, it was the second count—

1. The notes offered and read in evidence.

The large note payable to Grant and McGuffie, or order, is charged in this count to have been endorsed by them to the plaintiff Angus. The note is produced and read in evidence, and is endorsed by Grant and McGuffie. This endorsement is in law an assignment to the plaintiff, and after such endorsement Grant and McGuffie had no interest in the note.

This second count states that the smaller note payable to Grant or McGuffie, or bearer, was afterwards delivered by them to the plaintiff, who thereupon became the bearer thereof; and, as such, entitled to the moneys due upon the said note.

It is manifest that the evidence in the case was sufficient to maintain this second count, if either count was supported by the evidence.

If I am right here, the court below erred in ordering the verdict to be amended so as to make it applicable to the first count in this declaration—under the evidence in the case, the verdict cannot be applied to the first count in the declaration.

But it is contended that this case does not come within the rule by which a plaintiff is permitted to enter the verdict as upon one count in his declaration, and to enter a *nolle prosequi* upon the other counts.

This is a declaration stating two separate and distinct grounds of action, in two distinct and different parties. First, in the administrator of Grant, as the surviving partner of Grant and McGuffie, and second, in Angus Stewart, in his own right. The counts are wholly inconsistent with each other; if the administrator of Grant has a right to recover, Angus Stewart, in his individual capacity, can have no such right. This is not like the case of an action of slander, in which the declaration contains several counts upon different words spoken, the words in some of the counts being actionable, in others not; and where evidence was given only upon the counts on the actionable words.

Upon this point, I refer the court to the following cases, with only one single observation upon them: the evidence in this case being the notes upon which the suit was founded, was evidence under both counts in the declaration. Holt *v.* Scholefield, 6 Term Rep. 691.

In an action for slander, the declaration contained three counts upon the general issue being pleaded; the cause was tried, and the jury found a general verdict for the plaintiff for fifty pounds.

The first count in the declaration was for words not actionable in themselves; the words in the other counts were actionable.

A motion was made to arrest the judgment, because the damages were general upon all the counts.

The counsel for the plaintiff insisted that the judgment could not be arrested *in toto*, but there must be a *venire de novo*, or the verdict may be amended by the judge's notes, and entered upon the good counts.

The court were of opinion that there should not be a *venire de novo ;* and that as the damages were entire, the judgment must be arrested *in toto*.

Lawrence, Justice, said " that the plaintiff ought not to be at liberty to amend by the judge's notes in the case, because the evidence applied as well to the bad as to the good counts." Edwards *v.* Hopkins, Douglass' Rep. 361.

In *assumpsit*, the declaration contained several counts—some upon promises made by the testator, others on promises made by the defendants themselves. To the first set of counts *plene administravit* was pleaded, and the general issue as to the others.

The jury found for the plaintiffs with £147 damages, and a general verdict was entered.

The solicitor-general obtained a rule to show cause why the judgment should not be arrested, on the ground that the verdict was general, and the counts inconsistent, and such as require different judgments to be entered—viz.: judgment *de bonis testatores* on those where the promises were said to be by the testator; and *de bonis propriis* on the others. Baldwin, for the plaintiffs, afterwards obtained a cross-rule for the defendants to show cause why the postea should not be amended by the judge's minutes, and a verdict entered for the plaintiffs only on the counts to which the evidence given at the trial applied, and for the defendants on the other counts.

Buller, Justice, said that there was this distinction, that if there was only evidence at the trial upon such of the counts as were good and consistent, a general verdict might be altered from the notes of the judge, and entered only on these counts; but, if there was any evidence which applied to the other bad or inconsistent counts, as if, for instance, in an action for words, where some actionable words

Matheson's Admin. *v.* Grant's Admin.

are laid, and some not actionable, and evidence given of both sets of words, and a general verdict,) then the postea would not be amended, because it would be impossible for the judge to say on which of the counts the jury had found the damages, or how they had apportioned them; that, in such a case, the only remedy is by awarding a *venire de novo*.

The rule to arrest the judgment was discharged, and the other rule made absolute, but upon the payment of costs, including those on the motion in arrest of judgment.

The case of Bois *v.* Bois, 1 Levins, 134, was an action for slander. The declaration contained two counts. The words laid in one of the counts were actionable, in the other not.

The damages being entire, judgment was stayed.

Petrei, executor of Stuble, *v.* Hannay, 3 Term Rep. 659.

This was an action for money paid by the plaintiff as executor, and also for money paid by the testator to the use of the defendant, for money had and received by the defendant to the use of the plaintiffs as executors, and for money had and received to the use of the testator in separate counts; there were two pleas, the general issue and the statute of limitations. A verdict having been found for the plaintiff generally on the first issue, and no notice taken of the last, the defendant brought a writ of error to the House of Lords on two grounds, that no verdict was given on the second plea, and that two separate demands could not be joined in one action.

The plaintiffs then obtained a rule to show cause in the King's Bench, why he should not be at liberty to amend according to the judge's notes, by adding a verdict for him upon the second plea, and by entering the verdict on the counts for money paid by the executors, and for money had and received to their use.

Buller, Justice, in delivering the opinion of the court, said, such amendments have frequently been permitted. The entering the verdict was a slip of the clerk in not entering the verdict for the plaintiffs on the second plea. As to the second objection, he said he was clearly of opinion that it was not error, for though an executor when suing for a debt due to the testator, would not join a debt due to himself in his own right, yet it was the constant practice to join in the same declaration several counts for money had and received by the defendant to the use of the testator, and to the use of the executor as made.

In the case of Hooker *v.* Quilter, 2 Strang. 1271, there were three

counts in the declaration as executrix, and the fourth was for the use and occupation of the plaintiff's house. Judgment by default in K. B. and reversed in error.

*Per curiam.* There being no verdict, we can presume nothing, but that the fourth count is, as it appears, in her own right, which cannot be joined with the others, and the damages are entire.

This case of Hooker *v.* Quilter is more fully and better reported in 2 Wilson Rep. 171, *vide* this report.

*Nelson,* (attorney-general,) for the defendants in error.

It is objected,

1st. That the case does not fall within the rule by which a plaintiff is permitted to enter the verdict as upon one count in his declaration, and to enter a *nolle prosequi* upon the other counts.

2d. That conceding the case to be within the rule, the court below erred in vacating the order to arrest the judgment of November term, 1840, because of the lapse of time; and

3d. That there was no evidence in the case by which a verdict on the first count in the declaration, upon which the final judgment was rendered, could be supported.

As to the first objection: There are two classes of cases in which a verdict may be amended by the notes of the judge, or other evidence, so as to avoid the objection to the sufficiency of the declaration of the plaintiff. The first, where there is a general verdict, and the counts are consistent, although some be bad; the second, where the counts are inconsistent, although severally good. In the one case, all that is necessary to be shown to make the rule applicable is, that the evidence applied to the good as well as to the bad counts. In the other, it must be shown that the evidence applied exclusively to the count upon which the verdict is sought to be rendered. 19 Wendell's Rep. 628, Lusk *v.* Hastings.

The present is a case falling within the second class—of inconsistent counts—in which the judgment was arrested for misjoinder. To justify the order of the court, therefore, all that is necessary to bring the case within the rule, is to show that the evidence offered below was exclusively applicable to the first count of the plaintiff's declaration.

This will be done in the discussion of the 3d objection. Assuming for the present that it is so, the following cases will make it clear that the case under review falls within the rule.

Eddowes and another v. Hopkins and another, executors of Harris, 1 Douglas, 376, which establishes the principle that "where there is a general verdict on a declaration consisting of different counts, some of which are inconsistent or bad in point of law, and evidence has only been given on the good or consistent counts, the verdict may be amended by the judge's notes."

Williams v. Breedon, 1 Bosanquet and Puller, 329, "where evidence has been given on a bad count as well as on a good count, if it appears by the judge's notes that the jury calculated the damages on evidence applicable to the good count only."

The cases of Knightley v. Briel, 2 Maule and Selwyn, 533, and Doe v. Perkins, 3 Term Reports, 749, maintain the same well-established doctrine.

As to the second objection: The character of the case having been thus shown to be such as to bring it within the rule for amendment, the second inquiry is, whether the lapse of time interposed any obstacle to the exercise of the power by the court.

That it did not, will be demonstrated by the following cases:

Doe v. Perkins, 3 Term Reports, 750, in which the court use this strong language, "for that, according to the practice of amending by the judge's notes, which was of infinite utility to the suitors, and was as ancient as the time of Charles the First, the amendment might be made at any time."

Addington v. Allen, 11 Wendell, 421, and Chancellor Walworth's opinion in the same case, 384, 385.

Same case 12 Wendell, 215.

So also in the case of John Barnard v. John Whiting and others, 7 Mass. Reports, 358, the same principle is directly affirmed.

And in the case of Noah Clark v. Ezekiel Lamb, executor, &c., 8 Pickering's Reports, 415, Wilde, Justice, satisfactorily reviews the English and American authorities upon this question, and in a strong case maintains the existence of the power asserted by the court below in rendering the present judgment.

As to the third objection: The authority to vacate the order therefore existing, the remaining inquiry is, whether, upon the matter appearing in the record, the verdict was properly applied, and the judgment rendered upon the first count of the declaration.

The first objection taken by the plaintiffs in error on this point is to the form of the declaration. To this it is only necessary to reply, that the irregularities to which exception is taken, if they exist, which

is by no means conceded, are cured by the verdict. There is enough apparent upon the first count of the declaration to show the nature and extent of the demand.

The partnership is expressly averred between Grant and McGuffie—the survivorship of Grant—the promise to pay Grant and McGuffie—the promise to pay the plaintiff, administrator of Grant, not plaintiffs, (see amended record returned with *certiorari*,) and the very instruments recited in the declaration contain the promise of Matheson to pay Grant and McGuffie, &c.

But it is said that there is no profert of the letters of administration. None such was necessary; and if it was, it is conceded that the omission is cured by the verdict.

It is likewise said that there was no evidence in the case justifying a verdict for the plaintiff upon this count in the declaration—

1st. Because there is no sufficient proof of the partnership between Grant and McGuffie; the only evidence, it is said, being that found in the deposition of Chapman Levy.

If this were so, it is submitted that it would be abundantly sufficient; at any rate, it was testimony to go to the jury, who by their verdict have affirmed its sufficiency.

But is it true that this is the only evidence? The note and duebill executed by Matheson were given to Grant and McGuffie jointly, and whether general partners or not is a matter of not the slightest importance. Matheson himself, by the execution of the instruments, admits them to be jointly entitled to their contents, and that admission, coupled with the declaration deposed to by Levy, conclusively shows them to have been partners.

2. It is alleged that there is no proof of the death of Grant and McGuffie, or either of them, and the testimony of Chapman Levy is again referred to as being insufficient. To this objection the answer given to the last may be repeated—the evidence was for the jury, and their verdict excludes all inquiry into its sufficiency.

But was the question in the state of the pleadings open before the jury? Or, was it incumbent upon the plaintiff below to offer any evidence to show the death of Grant and McGuffie. He sued, as the administrator of Grant, the survivor of McGuffie. To his declaration, in that character, the defendants plead the general issue, and they thereby admitted the character in which the plaintiff sued. 1 Peters, 450; Peake's Evidence, 342; 2 Lord Raymond, 824; 3 Day's Reports, 303; 2 Dallas, 100; 4 Bibb, 391; 6 Monroe, 52, 59.

Besides, the grant of administration to the plaintiff was evidence of the death.   Greenleaf's Evidence, 587 ; 10 Pickering, 515.

It is further objected, that if any count in the declaration was supported, it was the second count, and that because of the averments of the plaintiff in the second count of his declaration.  But these averments are not evidence.   They are but the mode of stating the plaintiff's cause of action, and the proper subject of inquiry is, what was the state of the proof as shown by the record.

In reference to this it is said, that the note produced in evidence is endorsed by Grant and McGuffie.   But that endorsement is in blank, and transfers no property in the note.   Until the blank is filled up, which a holder for value might at any time do, the legal title to the note remained in the payees.   The motive of the endorsement too is apparent, having been doubtless made when it was transmitted to Mr. Levy for collection ; and the possession of the due-bill payable to bearer, by the plaintiff, was in virtue of his character as administrator.

To negative the idea of a legal transfer by a blank endorsement, the counsel for the defendant in error refers to the following cases : 2 Strange, 1103 ; 1 Ld. Raym. 443 ; 1 Comyns, 3111 ; 2 Burr. 1227 ; 5 Har. and Johns. 115 ; 6 Har. and Johns. 140, 527.

But it is insisted by the defendant in error that the amendment allowed, assuming, what is supposed to be unquestionable, that the evidence supports the judgment rendered, is nothing more than the exercise of a discretion by the court, and therefore not a fit subject of review in a court of error.   Marine Insurance Co. of Alexandria *v.* Hodgson, 6 Cranch, 206 ; Welch *v.* Mandeville, 7 Cranch, 152 ; Walden *v.* Craig, 9 Wheat. 576 ; Chevrac *v.* Rheinecker, 11 Wheat. 280 ; *Ex parte* Bradstreet, 7 Peters, 647 ; Life Insurance Company *v.* Wilson's heirs, 8 Peters, 306 ; the same, (Jones *arguendo*,) 302.

*Ogden*, in reply.

It is contended, on the part of the plaintiffs in error, that there was no sufficient proof of the partnership between Grant and McGuffie, and that there is no proof of the death of Grant and McGuffie, or of either of them ; that this partnership and death and the survivorship of Grant are material allegations in the declaration, and are all put in issue by the plea of the general issue.

To this it is answered by Mr. *Nelson*, that there was evidence enough

"to go to the jury, and by their verdict they have affirmed its suffi-
ciency."

It is contended that there was no legal evidence of a partnership
between Grant and McGuffie upon which the jury would be warranted
to find its existence.

In page 12 of the case, Levy says: "I was acquainted with Mr.
McGuffie, of the firm of Grant and McGuffie, who were said to have
"a mercantile house in Charleston." This is no evidence of the
existence of any such house in Charleston. It is at best mere hear-
say, and does not amount to a general reputation, which might have
been sufficient evidence to have justified the verdict of the jury.
But the attorney-general seems to suppose that the note having been
given by Matheson to Grant and McGuffie jointly is an admission of
the co-partnership between those gentlemen.

The note being given to Grant and McGuffie may amount to an
admission that he was indebted to such a firm, but it by no means
amounts to an admission as to who were the persons composing that
firm.    The general issue denies that the persons who are alleged in
the declaration were the persons composing the firm; it was necessary,
therefore, for the plaintiff below to have proved his allegation upon
that point.

But it is contended that in order to maintain the plaintiff's decla-
ration it was incumbent upon him to prove the death of Grant and
McGuffie, the survivorship of Grant, and the death of Grant.

It is said by the attorney-general that the plea of the general issue
admits all these facts.

This is a great mistake; it admits that the plaintiff is the adminis-
trator of Grant, but it admits nothing else.

The case of Conrad v. The Atlantic Insurance Company, cited from
1 Peters's Reports of cases decided in this court, decides most properly
that it is too late upon the trial to insist upon proof of the plaintiff
being a corporation.    That it should have been taken advantage of
by a plea in abatement.

And Mr. Peake, in his Law of Evidence, 342, in the passage cited
by the attorney-general, says, "When an action is brought by an
executor or administrator on a cause of action arising in the lifetime
of the deceased, and the defendant pleads only the general issue, it
is sufficient for the plaintiff to prove the same facts as must have been
adduced in evidence by the testator or intestate, had the action been
brought by him."

Now, suppose Mr. Grant had brought this action, must he not have proved that he had been a partner with McGuffie at the time the note was given? Must he not have proved that McGuffie was dead, and that he had survived him?

Mr. Peake lays down the law upon this subject with great accuracy, and he is supported by all the adjudged cases. The defendant cannot, under the general issue, controvert the fact that the plaintiff is the administrator of Grant, and the letters of administration may be evidence of the death of Mr. Grant. Every other material allegation in the declaration must be proved.

It is contended by the attorney-general, in his argument, that the name of Grant and McGuffie endorsed upon this note transferred no property in it, and that, therefore, the note was no evidence under the second count of the declaration. With great deference to the attorney-general, I contend that the endorsement in blank accompanied by a delivery of the note to the endorsee, is an absolute transfer of the note. The second count in this declaration states in express terms the endorsement and delivery of the note to Stewart, the endorsee. I understand the law as being now perfectly settled that a blank endorsement upon a bill of exchange or promissory note payable to A. B. or order transfers the note to the endorsee. See Chitty on Bills, 173. See the case of Linbarrow *v.* Macon, cited in note in 6 East Rep. 21.

In the case now under consideration, the plaintiff, in his declaration, states this transfer to him, and his right to recover under it; he cannot, therefore, be permitted to deny that such transfer was *bona fide*.

As I understand the law, an endorsement in blank is an absolute transfer of the note, from the original payee, who by that endorsement passes his whole interest in it. But the endorsement being in blank gives the endorsee a right to restrict its effect, by making it (the note) payable to some particular person or order.

As to the question whether this liberty to amend the verdict was not given upon an application which could not be made at so late a day, I shall not add any thing to what was said in my opening argument, except to examine some of the cases which have been cited by the attorney-general.

The case of Doe *v.* Perkins, 3 Term Rep. 750.

No motion had been made to arrest the judgment. It was a motion to set aside an order which had been made by a judge to amend

the postea, and a judgment which had been entered thereon, and upon which error had been brought and for a new trial. The court said, "that according to the practice of amending by the judge's notes, which was of infinite utility to suitors, and was as ancient as the time of Charles the First, the amendment might be made at any time."

Suppose, in that case, that a motion had been made by the defendant to arrest the judgment, which motion had been argued by counsel, and the judgment had been ordered to be arrested. Did the court, when they said this motion to amend may be made at any time, mean to say that after waiting two terms thereafter, and until another judge comes to hold the court, that it was time enough to call upon that judge to review what had been done in the court two terms before, for the purpose of setting aside what had been then done? I forbear to make any observations upon the contest in which such a case would have a tendency to involve the judges of the same court. If the court below were wrong in arresting the judgment, the remedy of the party was by writ of error.

In the case of Barnard *v.* Whiting, 7 Mass. Rep. 358.

There no order had been made to arrest the judgment; a motion was made to arrest the judgment, and upon the hearing of that motion it was denied, and leave was given to amend.

In the case cited from 11 Wendell it will be found that a motion to arrest the judgment and for a new trial had been made by the defendant and denied by the court, and judgment was entered for the plaintiff.

The defendant brought a writ of error to the Court of Errors, upon the ground that the judgment ought to have been arrested, and the motion to arrest was the very question brought up on the record in that case.

However that question was disposed of, the judgment was arrested, and there was an end of it.

The question here is not what a superior court, upon a writ of error, might do; the question is, can the same court review and reverse its own decision after the term in which it is made.

Not having 8 Pickering's Reports in my library, I have not been able to examine the case cited from it; and as I am desirous of sending this argument by the mail of this afternoon, I have not time to get the book.

One word as to the rule permitting an amendment of a verdict. The cases will all be found to be cases where the counts are all laid

in the same right, and where the amounts claimed are claimed by the same person in the same right. This is not the case of good and bad counts; the counts may be all good, but it is a case where a man brings an action in his name as administrator, and another action in his own individual right. No such action can be maintained, and no amendment was ever permitted in such a case. But we are told that the amendment is matter of discretion in the court, and that no error lies in such a case.

The motion to arrest a judgment is made upon purely legal grounds, and never is a matter of discretion in the court whether they will grant it or not.

The time when a motion to amend is to be made, in the court where the judgment has been arrested, is not matter of discretion, but of law.

But if this order to amend is a mere matter of discretion, how does it happen that, in the case cited from 11 Wendell, a writ of error was brought in a case where the Supreme Court of this state had exercised their discretion on the subject.

Mr. Justice STORY delivered the opinion of the court.

This is the case of a writ of error to the Circuit Court of the United States for the southern district of Alabama.

The original action was assumpsit brought by Stewart (the defendant in error) as administrator of Alexander Grant, who was the surviving partner of the firm of Grant and McGuffie, against Murphy and Darrington as administrators of Matheson upon a certain note and due-bill made and signed by Matheson in his lifetime. The note was as follows: "Charleston, 30th Sept., 1818. Four months after date I promise to pay Grant and McGuffie, or order, three thousand four hundred and twenty-eight dollars, eighteen cents, value received." The due-bill was as follows: "Charleston, 25th February, 1820. Due to Grant and McGuffie or bearer, on demand, three hundred and forty-four dollars sixty-six cents, with interest from date." The note was endorsed in blank, "Grant and McGuffie."

The declaration contained two counts. The first count is by Stewart as administrator upon both instruments, and upon promises made by Matheson in his lifetime, and by his administrators since his decease, to pay him (Stewart) as administrator. The second is upon both instruments, stating the note to have been endorsed by Grant and McGuffie to him, (Stewart,) and the due-bill to have been trans-

ferred to him by delivery. So that in legal effect he claimed in the first count as administrator, and in the second in his own personal right. At the trial (for it is unnecessary to state the pleadings) the jury found a general verdict for the plaintiff, upon both counts, at the November term of the court, 1840. And at the same term a motion was made in arrest of judgment for the misjoinder of the counts, which motion was sustained, and thereupon it was ordered by the court that the judgment be arrested. At the November term of the court, 1841, a motion was made to set aside the order in arrest of judgment, and for leave to amend the verdict so that the same might be entered upon the first count, and a *nolle prosequi* entered upon the other count. In support of this motion, an affidavit was made by the plaintiff's counsel, that the only evidence offered at the trial by the plaintiff was the deposition of Chapman Levy, Jacob Axon, and ―――― McKenzie, and the note and due-bill which were on the files of the court; and that no evidence was offered by the defendants; and that the cause went to the jury upon the above depositions of the plaintiff alone. Upon this evidence after notice to and hearing the counsel for the defendants, who offered no evidence in opposition to the motion, the court made an order, vacating the order in arrest of judgment, and allowing the verdict to be amended by entering the same on the first count, and that judgment be entered upon that count *nunc pro tunc* for the plaintiff. Judgment was accordingly entered thereon; and from that judgment the present writ of error has been brought.

The main question which has been argued is, whether the court had authority to make the amendment at the time and under the circumstances stated in the record. It is observable that there was no judgment in the present case originally entered, that the plaintiff takes nothing by his writ, *non obstante veredicto;* but a simple order passed arresting the judgment, which suspended all further proceedings until the court should put them again in motion, but still left the cause pending in the court. It is a case, therefore, in a far more favourable position for the exercise of the power of amendment, than it would have been if final judgment had passed against the plaintiff, or if judgment had passed for the plaintiff, and a writ of error had been brought to reverse it; for in the latter case not only is the writ of error deemed in law a new action; (*a*) but in contemplation of law the record itself is supposed to be removed from the court below.

(*a*) 2 Tidd's Practice, 1141; 9th edition, 1828.

Matheson's Admin. *v.* Grant's Admin.

And first, as to the time of making the amendment. It is said that it should have been either at the term when the order for the arrest of judgment was made, or at the farthest at the next succeeding May term of the court; and it was too late to make it a whole year afterwards. But there is no time absolutely fixed, within which such an amendment should be moved. All that the court requires is that it should be done within a reasonable time; and when no such change of circumstances shall have occurred as to render it inconvenient or inexpedient. Nothing is more common than motions to amend the record after a writ of error has been brought; nay after a writ of error has been argued in the court above, and sometimes even after judgment in the court of error, pending its session. Especially in cases of misjoinder of counts, which are incompatible with each other, as well as in cases where there are several counts, some of which are bad and some good, and a general verdict given for the plaintiff, such applications, when made within a reasonable time, are usually granted after error brought and the verdict allowed to be amended so as to be entered upon the good counts, or upon the counts not incompatible with each other. This is most usually done upon the judge's notes of the evidence at the trial, establishing upon what counts the evidence was in fact given or to which it was properly addressed or limited. But it may be done upon any other evidence equally clear and satisfactory, which may be submitted to the consideration of the court. In the present case we know from the most authentic sources contained in the record itself, and not disputed by any one, the whole evidence which was given at the trial. The case, therefore, falls directly within the range of the principles above stated. The practice is a most salutary one, and is in furtherance of justice and to prevent the manifest mischiefs from mere slips of counsel at the trial, having nothing to do with the real merits of the case. The authority to allow such amendments is very broadly given to the courts of the United States by the 32d section of the Judiciary act of 1789, ch. 20, and quite as broadly, to say the least, as it is possessed by any other courts in England or America; and it is upheld upon principles of the soundest protective public policy.

Without citing the authorities at large, which are very numerous upon this point, it will be sufficient to state a few only, which are the most full and direct to the purpose. In Eddowes *v.* Hopkins, 1 Doug. R. 376, there was a general verdict on a declaration consisting

of different counts, some of which were inconsistent in point of law, it was held that as evidence had only been given upon the consistent counts, the verdict might be amended by the judge's notes at the trial. The same point was decided in Harris v. Davis, 1 Chitty, Rep. 625. In Williams's Exec. v. Breedon, 1 Bos. and Pull. 329, where a general verdict was given on two counts, one of which was, bad, and it appeared by the judge's notes that the jury calculated the damages in evidence applicable to the good count only, the court allowed the verdict to be amended and entered on the good count only, though evidence was given applicable to the bad count also. In Doe v. Perkins, 3 Term R. 749, the court allowed the verdict to be amended after error brought and joinder in error by striking out certain words from the postea. An objection was on that occasion taken that the amendment could not be made after the expiration of one term after the trial. But the court said that there was no foundation for this objection; for that according to the practice of amending by the judge's notes, which was of infinite utility to suitors, and was as ancient as the time of Charles the First, the amendment might be made at any time. In Henry v. The Mayor, &c. of Lyme Regis, 6 Bing. R. 100, a verdict had been taken by consent on two counts, and upon application the court amended the postea, by entering it in one count to which the evidence applied, there being in fact but one cause of action, although the judge, who presided at the trial, declined to interfere. In Richardson v. Mellish, 3 Bing. R. 334, S. C. in error, 7 Barn. and Cress. 819, where a general verdict was given on a declaration, some of the counts of which were bad, the court allowed the postea to be amended, and entered up judgment upon a single count after argument in error; and the court in error sanctioned the proceeding. In Harrison v. King, 3 Barn. and Ald. 161, there was a general verdict for the plaintiff, and an application was made to the court to amend the verdict on the judge's notes after the lapse of eight years, and after the judgment had been reversed upon error; but the court refused it upon the ground of the long delay. In Clarke v. Lamb, 8 Pick. R. 415, the Supreme Court of Massachusetts, after a general review of the authorities, allowed the verdict to be amended upon the judge's notes.(a)

We think then that the objection taken at the bar to the amendment and entry of the judgment is not maintainable, and that the

(a) See also 2 Tidd's Prac. 901, 9th ed. 1828.

court acted within its rightful authority and jurisdiction in the allowance thereof.

Another objection, rather suggested than insisted on, is, that there is no profert of the letters of administration.    Whether that would constitute any objection whatsoever, in the state of Alabama, is a matter purely of local practice and proceedings.    It is well known that in many states of the union no profert of such letters is ever made, as, for example, in Massachusetts and other New England states.    But the objection, if it has any foundation, is undoubtedly cured by the verdict.

Another objection is, that the first count does not sufficiently allege a partnership between Grant and McGuffie, nor that Grant was the survivor of them.    We think otherwise.    The first count in the amended record brought upon the *certiorari* is by Stewart as administrator of Grant, and it states in the introductory part that he was the survivor of McGuffie, late merchants trading under the firm of Grant and McGuffie; and alleges promises by Matheson to them in their lifetime, and by Matheson in his lifetime. and by his administrators to the plaintiff to pay the sums of money stated in the count, and alleges as a breach the non-payment thereof, either to Grant and McGuffie in their lifetime or to the plaintiff since their decease. The count certainly is not drawn with entire technical precision and accuracy; but after verdict it must be taken to be sufficient for all the purposes of substantial justice.

But then it is said, that if the first count is good, still the evidence offered at the trial was not sufficient to establish any partnership between Grant and McGuffie; and if the evidence did establish any case, it was a case within the scope of the second count and not of the first.    We think neither branch of the objection is maintainable. There was certainly evidence enough to go to the jury on this point, and the very instrument on which the suit was brought, *prima facie*, imported a partnership at least in these transactions; and the jury, by their verdict, must be presumed to have found the fact in the affirmative.    In the next place, although the note was endorsed in blank by Grant and McGuffie, that endorsement was no proof that the interest on the same had passed to Stewart, as alleged in the second count, and the possession of the due-bill by Stewart was no necessary proof that he held it as owner in his own right.    For aught that appears, he may have held them both solely in his capacity as administrator; and he had a right, and the sole right, to say in which

capacity he elected to hold, as owner, or as administrator. He has elected the latter; and the evidence is sufficient to establish that right, *prima facie*. Besides, it can be of no concern to the plaintiff in error on which count the verdict is taken, for in either case it is equally a good foundation for a valid judgment against him, to the extent of the sums due thereon.

There is yet another view of this matter. The question of the amendment was a question of discretion in the court below upon its own review of the facts in evidence ; and we know of no right or authority in this court upon a writ of error to examine such a question, or the conclusion to which the court below arrived upon a survey of the facts, which seem to us to have belonged appropriately and exclusively to that court.

Upon the whole, in our opinion there is no error of the court below in the amendment and proceedings complained of, and the judgment is therefore affirmed with costs.

### ORDER.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the southern district of Alabama, and was argued by counsel. On consideration whereof, It is now here ordered and adjudged by this court, that the judgment of the said Circuit Court, in this cause be, and the same is hereby affirmed with costs and damages at the rate of six per cent. per annum.